IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JOEL D. HOPKINS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 06-00063-CV-W-HFS |
| | ) | |
| DON ROPER, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

Petitioner Hopkins, who is serving a life sentence after a conviction in Missouri State Court, seeks relief under 28 U.S.C. § 2254 because of alleged ineffective assistance of trial counsel. One version of the underlying criminal conduct that has been litigated appears in Masden v. State, 62 S.W.3d 661 (Mo.App. W.D. 2001). Petitioner's conviction was affirmed without a published opinion. The post-conviction issues he seeks to raise are identified summarily in Hopkins v. State, 156 S.W.3d 838 (Mo.App. W.D. 2005). Again there was an affirmance without a published opinion.

The State contends that because the affirmance was based on procedural grounds this court should not reach the merits. Missouri Circuit Court Judge Shafer did, however, rule against petitioner on the merits. Supplemental briefing has been requested and recently filed. I conclude I should deny relief, giving such deference as is required by the cited statute, but only after examining the merits of the claims.

The ineffectiveness contentions, as outlined by the Missouri Court of Appeals, are that (1) "counsel failed to investigate and present the testimony of Steve Masden, a co-defendant, who would have testified that [petitioner] did not participate in the murder", (2) "counsel failed to

investigate and present testimony of Masden that the rap lyrics found in the [petitioner's] prison cell, which were in [petitioner's] handwriting and linked the author of the lyrics to the murder, were actually composed by Masden and were merely recorded by the [petitioner]"; and (3) "counsel failed to present testimony from Masden's sister that her brother owned tennis shoes with a tread pattern which was similar to the pattern found imprinted on the victim's forehead and which the State had claimed at trial were from the [petitioner's] tennis shoes".

In a memorandum to counsel I have indicated that I was skeptical of the procedural bar ruling used to avoid the merits on the third issue and that I was most interested in the tennis shoe issue. Doc. 16. I believe it useful to deal with the points separately.

In the appellate "Memorandum of Reasons" referring to the denial of relief (Resp. Exh. 13) it is recited that Masden testified at the post-conviction hearing, consistently with petitioner's claim, that petitioner was in the house with Masden when the victim was killed in the basement, but that only Masden was in the basement and Masden killed the victim. At the Hopkins trial, however, Masden was called as a potential witness and declined to testify, taking the Fifth Amendment. A post-conviction contention was made that defense counsel's investigator had prompted Masden. It was also contended that earlier persuasive conversations with Masden could have induced him to testify as he did at the subsequent hearing. The trial judge accepted the investigator's version, however, and the appellate court concluded that the Hopkins contention that Masden could have been persuaded to confess at the Hopkins trial was too speculative to authorize relief. These fact-based rulings cannot be rejected and are reasonable and sound. The burden on petitioner set forth in 28 U.S.C. § 2254(d)(2) has not been satisfied on this point.

I agree with the State Court memorandum as to potential testimony by Masden that may arguably have been neglected or even somewhat mismanaged by counsel for Hopkins. Even at the time the Hopkins post-conviction motion was filed, counsel for Masden were still arguing that he was entirely innocent. Masden v. State, 62 S.W.3d 661 (Mo.App. W.D. 2001). Only after this contention was abandoned did Masden testify in exoneration of Hopkins. It is speculative and distinctly unlikely he would have given the desired trial testimony.

The contention that Masden would have acknowledged at the Hopkins trial that he was the author of the rap lyrics, and that Hopkins was only the scrivener, was rejected for essentially the same reasons as the first point was rejected. Masden was not yet cooperating. I reject the contention for the reasons stated in the Memorandum. Insofar as Hopkins could contend there might have been other supportive evidence for his contention about the rap lyrics, that has not been presented to the Missouri courts and would be in any event unpersuasive as to its significance.[1]

The final contention is that Masden's family, and in particular his sister, could have been compelled to acknowledge that he owned Air Zoom Nike shoes, which would fit the pattern of imprints on the victim's head. That would have been circumstantially supportive of the theory that it was Masden rather than Hopkins who had kicked the victim. The appellate Memorandum asserts that the pleading of t his issue was fatally defective in failing to identify the sister and failing to allege she would have testified. She was, however, a witness at the post trial hearing and there was no reliance by the State on a theory of defective pleading. A pleading deficiency was not relied on

---

[1]The lyrics apparently speak of a partnership between Masden and Hopkins, and they refer to the trunk of the Hopkins car as "my trunk." There is a conflict between trial counsel's testimony and that of Hopkins about whether Hopkins disclaimed authorship before his trial. Without hearing the witnesses this conflict cannot be reliably resolved. It does not control the result.

3

by the Circuit Judge in his ruling. Resp. Exh. 9, p. 108. The Circuit Judge simply relied on defense counsel's testimony that he was content with disproof, through the mother of petitioner Hopkins, that Hopkins himself owned such shoes, and that counsel "never knew if Mr. Masden did nor did not possess such shoes, much less if they were obtainable. . ." After seeking to discredit Ms Bascone, the principle witness against Hopkins, it was counsel's opinion that "no additional testimony was necessary in his opinion." The Circuit Judge concluded that this testimony showed "competent representation".

We need first to deal with the procedural bar issue. It initially struck me as odd that the bar was discovered by the appellate court (at least in the staff memorandum) when it was not an issue with counsel at the hearing or troubling to the trial court. In its response to my order seeking further briefing, the State does not establish that this sort of belated reliance on a pleading deficiency in a post-conviction motion is a procedure "firmly established and regularly followed" by the Missouri courts. Lee v. Kemna, 534 U.S. 362, 376 (2002) serves to caution federal trial and appellate judges against simply accepting a stated procedural bar without further examination. The State offers no precedent, much less one that is standard practice, for the way the potential testimony of Masden's sister was handled–that is, simply disregarding her unchallenged testimony at the hearing because the appellate court finds a pleading deficiency.

It may be that lack of verification of post-conviction claims is treated as a "jurisdictional" defect and not subject to waiver at the trial level. Malone v. Vasquez, 138 F.3d 711 (8th Circuit 1998). But I do not find a precedent, much less one regularly followed, for discovery of a fatal pleading deficiency on appeal, when the trial court ruled the merits, with acquiescence by the prosecutor. Thus I will also deal with the merits, as the Circuit Judge did.

4

Insofar as the Circuit Judge made findings, they are presumed to be correct. 28 U.S.C. § 2254(e). See Waine v. Sacchet, 356 F.3d 510 (4th Cir. 2004); Liegakos v. Cooke, 106 F.3d 1381, 1386 (7th Cir. 1997). In an ineffective assistance case, I suppose this presumption of correctness applies to a finding of lack of negligence by an attorney, as in any "due care" ruling by a fact-finder. Insofar as negligence may be so serious as to raise an issue of Constitutional deficiency, this seems to be a legal issue, to be ruled de novo. Martin v. United States, 2007 WL 3085432 (8th Cir.), citing United States v. Davis, 406 F.3d 505, 508 (8th Cir. 2005). But we do not get that far here.

In this case, the specific factual findings are not in controversy, but petitioner challenges the implicit finding of non-negligence and the ultimate issue of no ineffective assistance in a Constitutional sense.

If at the trial there had been a potential witness for Hopkins as to Masden's possession of the pertinent type of tennis shoes, I believe there would be a close question as to whether the Hopkins attorney and staff used due diligence. The shoes used to kick the victim in the face, either before or after his death, were of great pertinence to the trial. A jury must have been appalled by the conduct. It was helpful to the defense for Hopkins and his mother to deny ownership of such Nike shoes, but that was contradicted by Ms. Bascone's testimony that Hopkins had admitted to her that his Nike shoes and clothing had been thrown into a dumpster, presumably to prevent incrimination. Ms. Bascone also testified that "he", Hopkins, admitted stomping on the victim's face, so hard as to leave an impression.[2]

---

[2] I do not consider the Bascone testimony to have been fatally impeached, and it was probably generally accepted by the jury. The details of her version of what Hopkins said are doubtlessly quite shaky in their accuracy, but the jury heard both witnesses and made a valid choice.

Testimony compellingly shifting blame to his partner Masden, who allegedly did own Nike shoes, would have been of great benefit to the defense. Although defense counsel denied being told that Madsen had such shoes, there were only two possible owners, and it should have been a subject for investigation, even though the probative value was lessened by acknowledgment at trial by Hopkins that he also owned Nike shoes, contrary to his mother's contention, although he called them "cross trainers" rather than "turf shoes".

Assuming materially deficient investigation regarding Masden's shoes, I agree however with the ultimate conclusion that productive investigation would be speculative (as the Circuit Judge described the possibility of Masden testimony at the Hopkins trial), or just plain unlikely. Neither attorney questioned Tammie Masden about her willingness to cooperate with a Hopkins investigator before the Hopkins trial. Proving witness availability is a burden imposed on the movant under State law. Denson v. State, 31 S.W.3d 166, 176 (Mo.App. W.D. 2000). Federal law seems consistent, to establish prejudice. E.g. Morales v. United States, 199 F.3d 1322, 1999 WL 1015641 (2d Cir.).[3] Ms. Masden would surely have seen conflict with the defense of her own brother, whose attorney had instructed him not to talk to Hopkins representatives. A close family member would surely have sought advice, and would have been instructed not to cooperate.[4]

---

[3] It seems important here to avoid confusing two levels of prejudice. An omission by counsel is harmful if it resulted in the absence of trial testimony. The Missouri test, which seems appropriate, is that petitioner must establish this, using a preponderance test. This obligation is not, I believe, contrary to Federal law. 28 U.S.C. § 2254(d)(1). If the omission, more probably than not, did cause the loss of trial testimony, then a second issue of prejudice arises. That is, the one governed by Strickland v. Washington, 466 U.S. 668, 693-4 (1984), where the petitioner need only show that confidence in the result of the trial is undermined.

[4] I recognize that Masden did try to contact the Hopkins defense team, but what he had in mind has not been developed.

6

I conclude with the Circuit Judge that productive investigation regarding Tammie Masden and the tennis shoes was unlikely and speculative, that any deficiency in representation was thus nonprejudicial, and it cannot be concluded there was Constitutionally ineffective counsel in this respect.

The petitioner's motion for relief (Docs. 1 and 6) under 28 U.S.C. § 2254 is therefore DENIED.

  /s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

May 7, 2008

Kansas City, Missouri